20 Civ. 8283 (PAC)

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

ANDY KING,

Plaintiff,

-against-

THE CITY OF NEW YORK, et al.,

Defendants.

## MEMORANDUM OF LAW IN SUPPORT OF DEFENDANTS' MOTION TO DISMISS

**JAMES E. JOHNSON**
*Corporation Counsel of the City of New York*
Attorney for Defendants
100 Church Street, Room 2-100
New York, New York 10007-2601

Of Counsel: Eric Eichenholtz
Tel: (212) 356-2430
eeichenh@law.nyc.gov
Matter No.: 2020-037345

## TABLE OF CONTENTS

PRELIMINARY STATEMENT ................................................................................. 1

      A.   First Investigation, Hearing and Council Action
-- Suspension for Misconduct ..................................................... 3

      B.   Second Investigation, Hearing and Council
Action – Expulsion ..................................................... 6

      C.   Instant Complaint .................................................... 8

ARGUMENT ................................................................................................ 9

    POINT I ................................................................................... 9

    PLAINTIFF'S FIRST AMENDMENT CLAIM IS
WITHOUT MERIT ..................................................... 9

      A.   Plaintiff Fails to Plausibly Allege a Causal
Connection Between His Speech and His Removal
from the Council ..................................................... 10

      B.   Plaintiff's Conduct was Personal,
Discriminatory and Disruptive .................................................... 13

    POINT II ................................................................................... 17

    PLAINTIFF'S ALREADY-REJECTED DUE
PROCESS CLAIMS ARE FRIVOLOUS .................................................... 17

    POINT III ................................................................................... 19

    PLAINTIFF'S EQUAL PROTECTION AND
"SELECTIVE ENFORCEMENT" CLAIM IS
WITHOUT MERIT .................................................... 19

    POINT IV ................................................................................... 21

    PLAINTIFF'S CONSPIRACY CLAIMS MUST
BE DISMISSED BASED ON THE INTRA-
CORPORATE CONSPIRACY DOCTRINE .................................................... 21

    POINT V ................................................................................... 21

    PLAINTIFF'S STATE LAW CLAIMS ARE
WITHOUT MERIT .................................................... 21

        A.   New York State Constitutional Claims ............................................. 21

        B.   New York City Human Rights Law Claims ....................................... 22

        C.   CPLR Article 78 Claims .................................................................... 23

POINT VI ............................................................................................................... 24

        THE COUNCIL MEMBER DEFENDANTS ARE
        ENTITLED TO QUALIFIED IMMUNITY ........................................... 24

CONCLUSION……………………………………………………………..…25

# TABLE OF AUTHORITIES

**Cases**                                                                                          **Pages**

423 South Salina Street, Inc. v. City of Syracuse, 68 N.Y.2d 474 (1986)...........................22

Anderson v. Recore, 317 F.3d 194 (2d Cir. 2003)...................................................24

Appleton v. City of N.Y., 2019 NY Slip Op 30627[U] (Sup. Ct. N.Y. Cty. 2019)................23

Baker v. Schriro, 2011 U.S. Dist. LEXIS 138750 (E.D.N.Y. 2011)...............................18

Blair v. Bethel Sch. Dist., 608 F.3d 540, 544 (9th Cir. 2010).....................................10

Bostock v. Clayton Cty., ___ U.S. ___, 140 S. Ct. 1731 (2020)..................................15

Brandon v. City of New York, 705 F. Supp.2d 261 (S.D.N.Y. 2010)..............................18

Branti v. Finkel, 445 U.S. 507 (1980)................................................................15

Brevot v. New York City Dep't of Educ., 2007 U.S. Dist. LEXIS 16109 (S.D.N.Y. 2007).......23

Burkybile v. Board of Education, 411 F.3d 306 (2d Cir. 2005).....................................3

Camacho v. Brandon, 317 F.3d 153 (2d Cir. 2003)..............................................9, 15

Castine v. Zurlo, 756 F.3d 171, 176 (2d Cir. 2014)................................................17

Cleveland Bd. of Educ. v. Loudermill, 470 U.S. 532 (1985).....................................17-18

Cobb v. Pozzi, 352 F.3d 79 (2d Cir. 2003).......................................................10-11

Cortez v. City of New York, 2001 U.S. Dist. LEXIS 4867 (S.D.N.Y. 2001).......................3

Dechberry v. N.Y.C. Fire Dep't, 124 F. Supp. 3d 131 (E.D.N.Y. 2015).......................17-18

De Jesus v. City of New York, 2012 U.S. Dist. LEXIS 23090 (S.D.N.Y. 2012)..................23

Dudzik v. City of New York, 2003 U.S. Dist. LEXIS 1287 (S.D.N.Y. 2003).......................3

Elrod v. Burns, 427 U.S. 347 (1976)...............................................................15

Eubanks v. N.Y.C. Dep't of Educ., 2021 U.S. Dist. LEXIS 21771 (S.D.N.Y. Feb. 3, 2021)......22

Ezekwo v. New York City Health & Hosps. Corp., 940 F.2d 775 (2d. Cir. 1991)................14

Garcetti v. Ceballos, 547 U.S. 410 (2006).......................................................13-14

Gertskis v. United States EEOC, 2013 U.S. Dist. LEXIS 39110 (S.D.N.Y. 2013)............20-21

Giacalone v. Abrams, 850 F.2d 79 (2d Cir. 1988)................................................24

Giglio v. Dunn, 732 F.2d 1133 (2d Cir. 1984)..................................................17-18

Gutilla v. City of New York, 2015 U.S. Dist. LEXIS 12637 (S.D.N.Y. 2015)………………….18

Hardy v. New York City Health and Hosps. Corp., 164 F.3d 789 (2d Cir. 1999)………………22

Hauser v. Bartow, 273 N.Y. 370, 374 (1937)……………………………………………………....18

Heil v. Santoro, 147 F.3d 103, 109 (2d Cir. 1998)……………………………………………………15

Iscenko v. City of New York, 2017 U.S. Dist. LEXIS 103869 (S.D.N.Y. 2017)…………....20-21

Jenkins v. St. Luke's-Roosevelt Hosp. Ctr., 2009 U.S. Dist. LEXIS 105866 (S.D.N.Y.
2009)………………………………………………………………….…………………………19-20

King vs. N.Y.C. City Council, 2019 N.Y. Misc. LEXIS 6481 (Sup. Ct. N.Y. Co. 2019)…...….5-6

Knight v. State Department of Public Health, 275 F.3d 156 (2d Cir. 2001)……………………17

Koehler v. New York City, 2005 U.S. Dist. LEXIS 8901 (S.D.N.Y. 2005)……………………18

Krasner v. City of New York, 2013 U.S. Dist. LEXIS 136534 (S.D.N.Y.,2013)…………….....3

Lane v. Franks, 134 S.Ct. 2369 (2014)……………………………………………………………14

Lewis v. Cowen, 165 F.3d 154 (2d Cir. 1999)………………………………………...…14-15, 24

Locurto v. Giuliani, 447 F.3d 159 (2d Cir. 2006)………………………………………………...16

Malone v. City of New York, 2006 U.S. Dist. LEXIS 61866 (E.D.N.Y. 2006)……………...…19

Matthews v. City of New York, 779 F.3d 167 (2d Cir. 2015)………………………………13-14

McEvoy v. Spencer, 124 F.3d 92 (2d Cir. 1997)…………………………………………………...15

Miller v. N.Y. City Dep't of Educ., 71 F. Supp. 3d 376 (S.D.N.Y. 2014)………………………19

Morales v. New York, 22 F. Supp. 3d 256 (S.D.N.Y. 2014)………………………………...…20-21

Mt. Healthy v. Doyle, 429 U.S. 274 (1977)……………………………………………………...11

Moultrie v. Dep't of Corr., 2015 U.S. Dist. LEXIS 60080 (S.D.N.Y. 2015)………………...19-20

Munoz-Feliciano v. Monroe-Woodbury Cent. Sch. Dist., 2015 U.S. Dist. LEXIS 38696
(S.D.N.Y. 2015)……………………………………………………………………………..9-10

Nash v. Bd. Of Educ. Of N.Y., 2016 U.S. Dist. LEXIS 135793 (S.D.N.Y. 2016)…………..…17, 23

Pappas v. Giuliani, 290 F.3d 143 (2d Cir. 2002)……………………………………………...…16

Pickering v. Bd. of Educ., 391 U.S. 563 (1968)………………………………………14-15, 17

Rankin v. McPherson, 483 U.S. 378 (1987)……………………………………………………14-15

Richards v. City of N.Y., 2007 U.S. Dist. LEXIS 23726 (E.D.N.Y. 2007)……………………..…21

Ruotolo v. City of New York, 514 F.3d 184 (2d Cir. 2008)……………………………….....14

Savino v. City of New York, 331 F.3d 63 (2d Cir. 2003)……………………………………...18

Sulehria v. City of N.Y., 670 F. Supp. 2d 288 (S.D.N.Y. 2009)…………………………….....24

Velez v. Levy, 401 F.3d 75 (2d Cir. 2005)……………………………………………....9-12, 19

Ward v. NYC Health & Hosps. Corp., 82 A.D.3d 471 (1st Dep't 2011)………………….....22

Whitfield-Ortiz v. Dep't of Ed., 116 A.D.3d 580 (1st Dep't 2014)…………………….....23

**Statutes**

NY Executive Law § 296…………………………………………………………….....15-16

NY General Municipal Law §50-e…………………………………………………………....22

NY General Municipal Law §50-h…………………………………………………….....22

NYC Charter § 45………………………………………………………………………….11

New York City Administrative Code § 8-107…………………………………………….15-16

Plaintiff Andy King ("plaintiff") is a former New York City Council Member who was expelled from the Council on October 5, 2020, following an investigation into myriad acts of misconduct, being afforded a trial-like proceeding before the City Council's Standards and Ethics Committee, and debate on the floor of the City Council about adopting that Committee's recommendation of expulsion as a result of plaintiff's proven misconduct. This is part of a long line of meritless judicial proceedings brought by plaintiff to avoid being held accountable for his conduct, all of which have been rejected and dismissed, in the face of the City Council's properly held investigations, hearings, and deliberations into plaintiff's serious misconduct.

Indeed, plaintiff previously filed a notice of claim with the New York City Comptroller, two proceedings in state Supreme Court and his original complaint in this Court. Throughout, plaintiff has established a disturbing trend of asserting spurious allegations, only to then retreat from them, an engineered calculation to avoid excusing his misconduct or justifying his tenuous legal position. Even here, when facing defendants' original motion to dismiss, plaintiff avoided confronting the dubious merit of his claims, instead effecting a wholesale amendment of his complaint to completely re-write and re-cast his claims. Such conduct taxes the limited resources of both the City and the Court and demonstrates the same disrespect and disdain for the judiciary that plaintiff has shown to the City Council's proceedings and processes.

This time, plaintiff is trying a different tact – claiming he is the victim of a vast conspiracy by LGBTQ+ lawmakers in the City Council to retaliate against him. However, plaintiff fails to sufficiently plead what he is being retaliated for or any facts connecting that alleged retaliation to his expulsion for his well-documented misconduct. His complaint outlines his religious beliefs -- that same-gender sexual relations are an abomination – and quotes bible

passages that he believes supports his views.  For good measure, plaintiff also has now decided to sue several of his former colleagues, claiming they fomented this conspiracy.  In so doing, plaintiff tries again to harness litigation as a vehicle to avoid the repercussions of his proven misconduct, while advancing baseless assertions wholly lacking in legal and factual merit.

This warrants categorical dismissal.  Plaintiff's tales of conspiracy, of supposed infringement of his religious freedom, and contended inadequacy of the evidence against him amount only to dramatic storytelling.   As detailed below, to sustain his First Amendment claim, plaintiff is required to show that his alleged religious expressive conduct motivated two-thirds of the City Council to expel him.  The allegations in the amended complaint do not even come close to articulating facts that could make this conspiracy theory plausible.  Plaintiff does not even identify the conduct he claims is protected, nor could he establish as a matter of law that any of the conduct described in the complaint is constitutionally protected in the context of this case. Plaintiff's other claims fare no better.  His due process claim, previously rejected, lacks any merit.  His equal protection claim fails because the amended complaint fails to plausibly plead disparate treatment, as the alleged comparators are readily distinguishable.  His myriad of other claims as discussed below are unsupported by facts or law, and thus must be dismissed.

## STATEMENT OF FACTS[1]

Plaintiff Andy King ("plaintiff") is a former New York City Council Member who, prior to his expulsion from the New York City Council on October 5, 2020, represented

---

[1] This statement of relevant facts is derived in part from the allegations of the amended complaint and the documents referenced therein.  This statement of facts is also derived, in part, from the public dockets of previous cases brought by plaintiff, as well as the Council's Committee Reports, meeting minutes, and resolutions which are public records of which the Court can take judicial notice.

New York City's 12th Council District.  <u>See</u> Exhibit A,[2] Amended Complaint ¶20.  Plaintiff's

expulsion came after *multiple* investigations, two disciplinary hearings and two separate Council

resolutions: the first to suspend plaintiff with conditions and the second, after he continued to

commit misconduct, to expel him.[3]

**A.      First Investigation, Hearing and Council Action -- Suspension for Misconduct**

On October 28, 2019, the Council debated and voted, by a vote of 44-1-2,[4] to pass

a resolution imposing on plaintiff a 30-day suspension, a $15,000 fine, removal from all

committee assignments, oversight of his office by a Monitor, and required training.  <u>See</u> Exhibit

C.  The Council imposed these sanctions based on full investigation and hearing in which four

charges were substantiated by a preponderance of the evidence against plaintiff.  <u>Id.</u>, Exhibit B at

pp. 34-35.

---

[2] Unless otherwise specified, all references to exhibits are to those exhibits annexed to the Declaration of Eric Eichenholtz, dated May 24, 2021, submitted in support of defendants' motion to dismiss the amended complaint.

[3] Plaintiff cannot, in this action, contest the findings made in proceedings before the Council and its Standards and Ethics Committee.  All of those proceedings contained all the hallmarks of an adversarial, quasi-judicial proceeding, including both sides being represented by counsel, pretrial disclosures, the ability, at the hearing, to examine and cross-examine live witnesses, introduce documents in support of both sides' claims and defenses and make a record of any objections in point of fact and law.  The adjudications by the Committee of Standards and Ethics and his colleagues in the Council, collectively, provided neutrality in decision-making.  In this way, the Council's proceedings are analogous to (and often provide even more process than) other administrative proceedings regarding employee discipline for which *collateral estoppel* has been applied in subsequent litigation. <u>Cf.</u> <u>Burkybile v. Board of Education of the Hastings-on-the-Hudson Union Free School</u>, 411 F.3d 306 (2d Cir. 2005);  <u>Krasner v. City of New York</u>, 2013 U.S. Dist. LEXIS 136534, at *32 n.9 (S.D.N.Y., 2013); <u>Dudzik v. City of New York</u>, 2003 U.S. Dist. LEXIS 1287, at *24 (S.D.N.Y. 2003); <u>Cortez v. City of New York</u>, 2001 U.S. Dist. LEXIS 4867, at *16 (S.D.N.Y. 2001).

[4] The one vote against this resolution was by then-Council Member King himself.

The formal hearing into these charges spanned two days, in which live testimony was heard from numerous witnesses and documents were reviewed. Id. Plaintiff was given numerous opportunities to participate and declined to do so, instead making multiple attempts to delay the hearing. Id. at pp. 4-5. After reviewing all of the evidence submitted, including all of the live testimony taken at the hearing, the Committee issued a 39-page report containing detailed findings of fact regarding the four charges levied against plaintiff. See Exhibit B.

Based upon the ample evidence before it, the Committee substantiated all four charges against plaintiff. Id. at pp. 6-31. With regard to the charge of retaliation, the testimony and evidence established that plaintiff forced the resignation of a staff member and tried to fire another because they had cooperated with Council investigations into plaintiff's misconduct previously, and plaintiff believed that these staff members would do so again. Id. at p. 18. Plaintiff also sought to terminate a staffer because he perceived them to be "disloyal," and therefore likely to cooperate with a subsequent investigation. Id. The charge of disorderly conduct concerned plaintiff's refusal to address or discipline the conduct of one of his staffers, referred to as "Staffer-2," who was alleged to have acted in a physically and verbally threatening manner toward other staff members. See Exhibit B at pp. 19-22. Among other incidents, Staffer-2 physically intimidated and screamed at various staff members leading to at least one staffer's resignation, and attempted to fight another staffer. Id.

The gravamen of the third charge, alleging conflicts of interest, was that plaintiff's wife—an unelected, non-Council employee and indeed an employee of a labor union that does business with the City—had an impermissibly active role in the discharge of plaintiff's duties as a member of the City Council. See Exhibit B at pp. 22-30. The evidence and testimony showed that plaintiff: (1) permitted his wife to supervise the work of his staff, (2) permitted his

wife to exercise discretion in the hiring and firing of his staff, (3) used staff resources to publicly promote the interests and reputation of his wife, and (4) used Council funds and resources for a retreat to the Virgin Islands to benefit his wife and himself. See id. Unrelated to plaintiff's wife but still a conflict of interest, the evidence also established that plaintiff asked certain staff to use their personal vehicles to chauffeur him, but would not reimburse them for gas. See id. at 25-26.

The final charge, harassment, was based upon plaintiff's reaction to a photograph that Staffer-4 had posted on plaintiff's Twitter account. See Exhibit B at p. 30. Staffer-4 had mistakenly posted a photograph from the 2015 Pride March[5] to plaintiff's City Council Twitter account, rather than Staffer-4's personal Twitter account. See id. at 30. Staffer-4 testified that the photo depicted Council Members Corey Johnson and Rosie Mendez dancing and holding Pride flags. Id. Staffer-4 testified that plaintiff "seemed angry" when confronting Staffer-4 at a staff meeting about the photo, and stated, in sum and substance, "I don't approve of this behavior […] to me, this is the same as child pornography." Id. (alterations in original). As a result of these comments made in the workplace and the negative way they impacted Staffer-4, the Committee sustained the harassment charge, concluding that this was harassing and derogatory comments regarding sexual orientation that violated the equal employment opportunity policy of the City Council.

Plaintiff failed to cooperate with, and often openly defied, the investigation and hearing into these charges. Plaintiff's defiance culminated in a failed attempt to seek an injunction preventing the Council from proceeding with the vote to adopt the Committee's report. See generally King vs. City of N.Y.C. City Council, N.Y. Supreme Court, New York

_____

[5] The Pride March is an annual civil rights demonstration in New York City which celebrates the lesbian, gay, bisexual, transgender, and queer or questioning ("LGBTQ") community.

County, NYSECF Index No. 160439/19 (docket nos. 1, 3).[6]  In that case, plaintiff makes due process arguments analogous to those made herein.  The Supreme Court, New York County, denied his request for injunctive relief and dismissed the proceeding on multiple grounds, including that plaintiff's due process claims were without merit and that Council Member discipline and expulsion were squarely within the province of the legislature and non-justiciable. See King vs. N.Y.C. City Council, 2019 N.Y. Misc. LEXIS 6481 (Sup. Ct. N.Y. Co. 2019).

At or around the same time, plaintiff filed a notice of claim against the Council, alleging various constitutional violations in connection with the investigation.  See Exhibit F. After the Comptroller scheduled a date for plaintiff's sworn testimony to support his claim, plaintiff withdrew his notice of claim.  Id., Exhibit G.

**B.      Second Investigation, Hearing and Council Action – Expulsion**

In February 2020, plaintiff was charged with additional charges of misconduct stemming from acts of discrimination in violation of Council policy and retaliatory conduct, as well as improper conduct that constituted a conflict of interest and, most appallingly, violations of the disciplinary resolution previously imposed by the Council.  See Exhibit D at p. i-viii.  On October 5, 2020, the Council debated and voted, by a vote of 48-2-0,[7] to pass a resolution expelling plaintiff, given that lesser sanctions had already been imposed.  See Exhibit E.

When the Council originally sought to adjudicate this blatant misconduct, plaintiff's response was once again obfuscation and delay, without providing any defense on the merits.  Plaintiff again filed a Petition in Supreme Court with a motion for emergency injunctive

---

[6] This electronic docket is accessible via the New York State Uniformed Court System website.

[7] One of the two votes against this resolution was then-Council Member King himself.

relief to prevent the Council from proceeding with an evidentiary hearing. See King v. New York City Council, N.Y. Supreme Court, N.Y. County Index No. 154185/2020 (Docket Nos. 1, 3), see also Exhibit D at pp. 5-6. The Council again filed opposition papers arguing that this motion was frivolous, and plaintiff, faced with that opposition, withdrew the case with prejudice before his frivolous claims could be heard and decided by the Court. Id. at Docket Nos. 6, 11.

As the Council's evidentiary hearing proceeded, the Standards and Ethics Committee once again was presented with extensive evidence of plaintiff's misconduct, including testimony from multiple witnesses. See Exhibit E. With respect to the first charge, the evidence showed that plaintiff engaged in gender and/or disability discrimination when, upon one of his staff members asking to be excused from an event due to menstrual bleeding, plaintiff responded "put a Band-Aid on it" and laughed. The evidence further showed plaintiff engaged in discriminatory conduct by adversely altering that same staffer's job responsibilities following the incident and forcing the staffer to go on an indeterminate, unpaid and unnecessary medical leave. See Exhibit E at pp. 9-21.

Plaintiff was also found guilty of two charges pertaining to conflicts of interest and disorderly conduct. Id. at pp. 22-30. Specifically, the evidence demonstrated plaintiff required a staffer to pay him personally $2,000, in cash, after plaintiff had arranged for the staffer to receive a larger bonus derived from Council funds. Id.[8] Finally, plaintiff was found

---

[8] In the amended complaint, plaintiff implausibly characterizes the testimony of this staffer as "perjury" because of confusion the staffer had about the date plaintiff was given the $2000 in cash (the cash was withdrawn August 15 and August 16, but given to plaintiff August 16). See Exhibit A ¶¶133-139. Plaintiff bases his entire due process claim on this so-called "perjury." Id. ¶169. However, it is clear that documentary evidence confirmed the August 16 payment, and the Standards and Ethics Committee detailed in their report that the explanation for the discrepancy

guilty of numerous violations of the Council's previous resolution pertaining to his misconduct, including failing to pay even a penny of the $15,000 fine he was ordered to pay and failing to cooperate with the very monitor appointed by the Council. <u>See</u> Exhibit E at pp. 30-50. Specifically, plaintiff was found openly hostile to the work of the Council-appointed monitor, was deceptive about staff meetings and attempted to make employment decisions behind the back of the monitor, all to evade Council-imposed oversight designed to ensure proper compliance with the Council's policies, including its equal employment opportunity policy. <u>Id.</u>

In sum, the Committee found the evidence at the hearing demonstrated that plaintiff instilled a "culture of fear" in his office, that he showed open disdain for the Council Monitor and for polices, including equal employment opportunity policies. <u>Id.</u> at pp. 53-54. The Committee recommended expulsion because it was the only remaining resort, "having exhausted all viable alternatives, including imposition of suspension, a monitor, mandated training, and a fine. Even after the appointment of a full-time Monitor in [plaintiff's] office, [he] has demonstrated blatant disregard for the rules and policies of the Council and has continued to engage in impermissible intimidation and mistreatment of [his] Staff. The Committee therefore concludes that the sanction of removal from office is the only viable means by which to prevent further serious misconduct . . . ." <u>Id.</u> at p. 54.

## C. **Instant Complaint**

After the two failed state court proceedings described above and the virtually unanimous decision of the Council to expel him, plaintiff brought the instant complaint. After interposing a complaint sounding in race discrimination that, defendants contended, failed to

---

was both credible and plausible and the staffer acknowledged the basis of the discrepancy upon reviewing the pertinent documentation. <u>See</u> Exhibit E at pp. 26-29.

state a cause of action and neglecting to timely respond to defendants' motion to dismiss, plaintiff was given an opportunity to amend by this Court.  He amended his complaint, not merely restating the meritless race discrimination claims in his original complaint, but also adding meritless claims and multiple new defendants.  Defendants now move to dismiss this flawed amended complaint, with prejudice.

## ARGUMENT

### POINT I

### PLAINTIFF'S FIRST AMENDMENT CLAIM IS WITHOUT MERIT

While a First Amendment claim with respect to the removal of a City Council member is cognizable, it is the sort of claim where judicial intervention is disfavored and, as such, plaintiff must meet an exceedingly high legal bar to proceed.  Plaintiff must establish in his complaint, with "specific and detailed factual allegations", that "(1) his actions were protected by the First Amendment; and (2) the defendant's alleged conduct was in response to that protected activity."  Velez v. Levy, 401 F.3d 75, 97 (2d Cir. 2005).   Courts are loathe to intervene on First Amendment grounds in disputes between elected legislators because doing so would "subject to judicial review all sorts of politically motivated conduct committed within the confines of legislatures and best left within the legislative sphere."  Camacho v. Brandon, 317 F.3d 153, 161 (2d Cir. 2003).

As another judge of this Court observed, "the political arena is a unique setting where ordinary notions of First Amendment protection sometimes yield to the political nature of democratic governance. [Courts consistently] acknowledge a distinction between permissible retaliation among politicians in pursuit of their political agendas, and actionable retaliation in

violation of the First Amendment."  Munoz-Feliciano v. Monroe-Woodbury Cent. Sch. Dist., 2015 U.S. Dist. LEXIS 38696, at *24 (S.D.N.Y. 2015), aff'd, 637 Fed.Appx. 16 (2d Cir. 2016). Far from being constitutionally prohibited, "we *expect* political officials to cast votes in internal elections in a manner that is, technically speaking, retaliatory, i.e., to vote against candidates whose views differ from their own."  Blair v. Bethel Sch. Dist., 608 F.3d 540, 544 (9th Cir. 2010) (emphasis added).  Moreover, in evaluating a First Amendment claim concerning the removal of a City Council member, the Court must remain mindful of the critical distinction between speech of the other Council members seeking plaintiff's removal and the actual act of removing the employee.  This distinction is essential to properly balancing the rights of the Council Member subject to removal with the First Amendment rights of the other Council Members who debated and voted in support of removal.  Velez, 401 F.3d at 99.

Here, plaintiff does not even come close to meeting the high bar needed to have this Court interfere in the City Council's decision to expel him.  Plaintiff cannot properly plead, much less establish, either element of his First Amendment claim because he fails to provide this court any plausible basis to conclude the 48 members of the council who voted to expel him were motivated by anything other than the factual findings of an investigation against him.  Nor could he even establish he engaged in conduct protected by the First Amendment in the context of his position with the City Council.

A.     **Plaintiff Fails to Plausibly Allege a Causal Connection Between His Speech and His Removal from the Council**

This Court need not even reach the issue of whether plaintiff's anti-LGBTQ+ views were entitled to some First Amendment protection in the context of this case.  This is because plaintiff fails to plausibly allege any "causal connection between protected expression and an adverse employment determination indirectly by showing that the protected activity was

followed by adverse treatment in employment, or directly by evidence of retaliatory animus." Cobb v. Pozzi, 352 F.3d 79, 97 (2d Cir. 2003), (internal quotation marks omitted). As noted above, plaintiff must plead specific and detailed facts to demonstrate causation. See Velez, 401 F.3d 75, 97.

Plaintiff has not, and simply cannot, connect his alleged views on LGBTQ+ individuals with the action of the Council to remove him. In order to do that, he would need to show that enough former colleagues with the power to act to remove him – two-thirds of the Council – acted with improper animus. To be sure, plaintiff has opined in his Amended Complaint that disputes grounded in his alleged First Amendment activities created animosity with several Council members who voted to remove him, including the Council Speaker. However, these members could not, alone, possess the authority to remove plaintiff, as he readily admits in his complaint. See NYC Charter § 45 (requiring a 2/3 vote of 51 Council Members to expel a member). Plaintiff was removed following a 48-2 vote of the Council. The decisive margin of Council Member colleagues needed to authorize plaintiff's removal came from Council Members to whom plaintiff ascribes *no* retaliatory animus and who independently[9] concluded plaintiff had committed misconduct warranting expulsion. This fact alone eviscerates any link between the allegedly protected activity and plaintiff's expulsion. See Exhibit A ¶ 143.[10]

_____

[9] Indeed, an earlier attempt by Council Member Van Bramer to expel plaintiff 2019 was rejected, underscoring the fact that the Council Members identified by plaintiff herein lacked authority to singlehandedly expel plaintiff. See Exhibit A ¶ 114, Exhibit C.

[10] For similar reasons, the First Amendment claim also fails under the "same decision" doctrine set forth in Mt. Healthy v. Doyle, 429 U.S. 274 (1977).

Velez is instructive.  There, then-Schools Chancellor Harold Levy acted with unilateral authority to remove the plaintiff, a Community School Board member.  The Court found plaintiff had sufficiently alleged a causal connection between protected activity and Levy's unilateral *action* in removing Velez.  However, the Court dismissed the related First Amendment claims against the School Board members who likewise supported Velez's ouster, finding the plaintiff did not adequately establish causation to support a First Amendment claim against them.   The Court observed, "though the actions of the board member defendants undoubtedly set into motion Velez's ouster, those actions cannot . . . support a First Amendment retaliation claim."  Velez, 401 F.3d at 99.  The Court explained this is so because those individuals "were 'retaliating' against the plaintiffs by voicing their political opinions, rather than exercising some sort of legal authority . . .  however outrageous the legislators' statements were, no valid federal retaliation claim existed."  Id.  To hold otherwise would, as discussed above, improperly place the courts in a position to referee the internal political disputes of the legislature.

Plaintiff attempts to circumvent this gap in causation by alleging – in bald conclusory fashion without factual support – that the Council Members who did not harbor this retaliatory animus were "scared" to not vote to expel him.  See Exhibit A ¶ 143.  Plaintiff does not plead a single factual allegation to support this statement, much less the specific and detailed allegations necessary.  That deficiency is all the more pronounced given the public record – the report of the Committee of Standards and Ethics as well as statements made by Council Members during the vote of the City Council – all of which contradicts plaintiff's empty claim of

manipulated colleagues.[11]    Accordingly, plaintiff has failed to plausibly plead a connection between his allegedly protected conduct and his expulsion from the Council.    Therefore, his First Amendment claim must be dismissed.

**B.    Plaintiff's Conduct was Personal, Discriminatory and Disruptive**

Even if this Court were to entertain plaintiff's red herring argument that his views regarding the LGBTQ+ community were somehow connected to his expulsion, plaintiff's First Amendment case remains a dead end.  Plaintiff cannot establish, as a matter of law, that he has engaged in speech or expressive conduct that finds First Amendment protection.  Beyond generally stating plaintiff believed homosexuality is sinful and outlining occasions of political disagreements regarding LGBTQ+ rights with his fellow Council Members, the amended complaint fails to cite to specific instances of speech or expressive conduct.  Even if plaintiff could actually articulate particular conduct, what plaintiff intimates in the complaint was protected conduct would not be in this context.  What plaintiff describes are not expressions of religious belief but rather disruptive, discriminatory statements that find no protection in the First Amendment in the context of this sort of legal challenge.

First, when determining if the speech of a public official is protected by the First Amendment, a Court must determine "whether the [official] spoke as a citizen on a matter of public concern."  Matthews v. City of New York, 779 F.3d 167, 172 (2d Cir. 2015) (internal quotations omitted), quoting Garcetti v. Ceballos, 547 U.S. 410, 418 (2006).  Within this first step, the Court must consider two additional subquestions: "(1) whether the subject of the employee's speech was a matter of public concern and (2) whether the employee spoke 'as a

---

[11] It is telling that plaintiff would proudly proclaim his own resolute behavior while deeming (and demeaning) these fellow legislators to have been coerced and easily cowed.

citizen' rather than solely as an employee." Id. (some internal quotations omitted). "If the answer to either question is no, that is the end of the matter." Id. "If, however, both questions are answered in the affirmative, the [C]ourt then proceeds to the second step of the inquiry," where it asks "whether the relevant governmental entity 'had an adequate justification for treating the employee differently from any other member of the public based on the government's needs as an employer.'" Id., quoting Lane v. Franks, 134 S.Ct. 2369, 2380 (2014). This step requires a balancing between the government interest in properly functioning and the individual's First Amendment rights. When the balance tips in the former direction, the government can act concerning the speech. See Pickering v. Bd. of Educ., 391 U.S. 563 (1968).

First, even if, as plaintiff alleges, he made statements that implicated his religious beliefs, such expression of his personal religious belief are inherently "personal in nature," and not matters of public concern. Ezekwo v. New York City Health & Hosps. Corp., 940 F.2d 775, 781 (2d. Cir. 1991); see also Ruotolo v. City of New York, 514 F.3d 184 (2d Cir. 2008). Moreover, any conduct connected with plaintiff's work as a Council Member that, either through speech or expression, demeaned his LGBTQ+ colleagues or staff, or the broader LGBTQ+ community by saying they are inherently detestable, sinful or amoral would not be protected conduct under Pickering. In Pickering, the Supreme Court established a test that balances "the interests of the [employee], as a citizen, in commenting upon matters of public concern and the interest of the State, as an employer, in promoting the efficiency of the public services it performs through its employees." Lewis v. Cowen, 165 F.3d 154, 161 (2d Cir. 1999), quoting Rankin v. McPherson, 483 U.S. 378, 384 (1987). Through this balancing test, the Court determines whether the employee's First Amendment protected conduct "'impairs discipline by superiors or harmony among co-workers, has a detrimental impact on close working

relationships…or impedes the performance of the speaker's duties or interferes with the regular operation of the enterprise.'" Lewis, 165 F.3d at 162, quoting Rankin, 483 U.S. at 388. In conducting this balancing test, "[s]ubstantial weight is accorded the government employer's prediction that given speech has the potential for disruptiveness" provided the prediction is "reasonable." Heil v. Santoro, 147 F.3d 103, 109 (2d Cir. 1998).

This case presents the classic formulation in which the Pickering balancing test weighs decidedly against according First Amendment protection to expression of the allegedly "religious" speech described by plaintiff in his complaint. As an initial matter, plaintiff's role as a policymaking employee already tips the Pickering scale heavily in favor of the defendants. The Supreme Court has consistently held that policymaking officers of a municipality, such as the plaintiff herein, have far less constitutional protection regarding political disagreements with other policymakers than a non-policymaking employee would have. See Camacho, 317 F.3d at 160, citing Elrod v. Burns, 427 U.S. 347 (1976); Branti v. Finkel, 445 U.S. 507 (1980). "[T]he policymaking status of the discharged or demoted employee is very significant in the Pickering balance," but not conclusive. McEvoy v. Spencer, 124 F.3d 92, 103 (2d Cir. 1997).

The scale tips further in the defendants' favor when considering the disruption caused by the speech and expressive conduct described in the amended complaint. Federal, state and local law (as well as New York City Council policy) prohibit conduct that constitutes either disparate treatment of LGBTQ+ employees or conduct that creates a hostile work environment for plaintiff's colleagues or the employees he supervises on the basis of sexual orientation. See Bostock v. Clayton Cty., ___ U.S. ___, 140 S. Ct. 1731 (2020); New York State Executive Law § 296(1)(a), New York City Administrative Code § 8-107(1)(a). State and local law similarly prohibits the government from discriminating against its citizens in public accommodations on

the basis of sexual orientation, which would plainly include the constituent services their elected Council Member provides. <u>See</u> New York State Executive Law § 296(2)(a); New York City Administrative Code § 8-107(4)(a)(1). The unspecified statements that "manifested" a religious belief that LGBTQ+ individuals are inherently sinful and amoral, if uttered in the workplace or in connection with his elected office, would clearly constitute disruptive speech that justifies governmental action. A high-ranking City policymaker comparing fellow legislators who participate in a Pride march with others who engage in detestable conduct like child pornography or using his stereotypes of the LGBTQ+ community as justification for refusing to commemorate the tragedy of lives lost in a mass shooting event by reading their names (<u>see</u> Exhibit A ¶ 40-45) is completely corrosive, impedes the ability of the Council to provide equal employment opportunity, and erodes public trust that the City government will respect and protect its citizens' legal rights and, indeed, their very dignity.

Plainly, given plaintiff's prominent policymaking position within the City government, this case is even more compelling than comparable cases in which a <u>Pickering</u> balancing analysis was applied with respect to uttering discriminatory stereotypes of a statutorily protected, historically marginalized group of citizens. <u>See</u> <u>e.g</u> <u>Pappas v. Giuliani</u>, 290 F.3d 143, 146—147 (2d Cir. 2002) (upholding police officer's termination for disseminating racist and anti-Semitic materials where NYPD had a reasonable concern the officer's actions would impair its ability to perform its mission, thus outweighing plaintiff's free speech interest), <u>cert.</u> <u>denied</u> <u>sub</u> <u>nom.</u> <u>Pappas v. Bloomberg</u>, 539 U.S. 958 (2003); <u>Locurto v. Giuliani</u>, 447 F.3d 159, 178 (2d Cir. 2006) (rejecting free speech claim by NYPD and FDNY employees terminated for participating in racist Labor Day parade float).

Moreover, to the extent plaintiff is attempting to use the "free exercise" clause to somehow give First Amendment protection to speech and expressive conduct that would otherwise be discriminatory, demeaning, and plainly illegal, such an argument finds no support in the law. Indeed, any attempt by plaintiff to "promote[] religious messages while working . . . on [City] business, rais[es] a legitimate Establishment Clause concern" that weighs heavily in favor of government prohibition of the conduct under the Pickering balancing test. Knight v. State Department of Public Health, 275 F.3d 156, 166 (2d Cir. 2001) (rejecting claim that advocating religious beliefs at work violated the First Amendment). Nor does plaintiff's absurd suggestion that he needed to engage in improper speech to gain the support of his Christian constituents change this analysis. Cf. Castine v. Zurlo, 756 F.3d 171, 176 (2d Cir. 2014). Accordingly, plaintiff cannot claim, as a matter of law, First Amendment protection in his allegedly religiously motivated speech and expressive conduct.

## POINT II

### PLAINTIFF'S ALREADY-REJECTED DUE PROCESS CLAIMS ARE FRIVOLOUS

Plaintiff's frivolous due process claims, already rejected in his prior Article 78 proceeding,[12] can be quickly disposed. When a plaintiff alleges a due process violation, the deprivation of a protected interest "is not in itself unconstitutional; what is unconstitutional is the deprivation of such an interest *without due process of law*." Dechberry v. N.Y.C. Fire Dep't, 124 F. Supp. 3d 131, 159 (E.D.N.Y. 2015) (citation and quotation marks omitted) (emphasis in

---

[12] Plaintiff's due process claims were rejected in his first Article 78 proceeding and withdrawn with prejudice in his second. Plaintiff is now barred by the doctrine of *collateral estoppel* from re-litigating those claims herein. See e.g. Nash v. Bd. Of Educ. Of N.Y., No. 99 Civ. 9611 (NRB), 2016 U.S. Dist. LEXIS 135793 at *17-25 (S.D.N.Y. 2016).

original); see also Cleveland Bd. of Educ. v. Loudermill, 470 U.S. 532, 546 (1985); Giglio v.

Dunn, 732 F.2d 1133, 1135 (2d Cir. 1984). "[T]here is no requirement pursuant to the

Fourteenth Amendment, that a specific procedure be used, nor is a plaintiff entitled to the

procedure of his or her choice. Plaintiff is entitled only to notice and 'an opportunity [to be

heard] … at a meaningful time in a meaningful manner." Gutilla v. City of New York, 2015

U.S. Dist. LEXIS 12637, at *23 (S.D.N.Y. 2015) (citation and quotation marks omitted); Baker

v. Schriro, 2011 U.S. Dist. LEXIS 138750, at *15 (E.D.N.Y. 2011) ("The question presented in a

Section 1983 suit is whether notice and hearing were provided in a manner consistent with the

'minimal' requirements imposed by the Constitution").

   Here, prior to his expulsion, and pursuant to the Rules of the City Council,

plaintiff received notice of the charges, an opportunity to present, through counsel, evidence in

support of his defense, to cross-examine witnesses and to be heard on the evidence presented at a

hearing before the Standards and Ethics Committee.[13] Prior to the expulsion vote, he was

allowed to speak in his defense to the Council. He had access to, and utilized, the state court

system through Article 78 of the New York State Civil Practice Law and Rules. Given these

multiple avenues to be heard, plaintiff clearly was afforded sufficient procedural process. See

Koehler v. New York City, 2005 U.S. Dist. LEXIS 8901 (S.D.N.Y. 2005).

---

[13] Plaintiff's "malicious abuse of process" claim fails for the same reason. There can be no abuse of process claim where, as here, the rules of the Council were properly followed to adjudicate any dispute over whether plaintiff committed misconduct and the propriety of the sanction against him. See Savino v. City of New York, 331 F.3d 63, 77 (2d Cir. 2003) (there can be "no abuse of process because whatever may have been respondent's motives, she used the process of the court for the purpose for which the law created it"); Brandon v. City of New York, 705 F. Supp.2d 261, 275 (S.D.N.Y. 2010) ("If [one] uses the process of the court for its proper purpose, though there is malice in his heart, there is no abuse of process.") (alteration in original), quoting Hauser v. Bartow, 273 N.Y. 370, 374 (1937).

Plaintiff's substantive due process claim is likewise frivolous. "[W]here a specific constitutional provision prohibits government action, plaintiffs seeking redress for that prohibited conduct in a § 1983 suit cannot make reference to the broad notion of substantive due process.'" Miller v. N.Y. City Dep't of Educ., 71 F. Supp. 3d 376, 385 (S.D.N.Y. 2014), aff'd 2015 U.S. App. LEXIS 20028 (2d Cir. Nov. 19, 2015), quoting Velez, 401 F.3d at 94. Here, any substantive due process claim would be entirely subsumed within plaintiff's first amendment, equal protection and procedural due process claims. Thus, plaintiff cannot maintain a separate substantive due process claim. See Velez, supra; Malone v. City of New York, 2006 U.S. Dist. LEXIS 61866 *30 (E.D.N.Y. 2006) ("Any substantive due process claim also fails because Malone has arguably alleged a violation of his right to equal protection, a right which is explicitly protected by the Constitution").

## POINT III

### PLAINTIFF'S EQUAL PROTECTION AND "SELECTIVE ENFORCEMENT" CLAIM IS WITHOUT MERIT

Plaintiff's equal protection claims remain deficient for substantially the reasons stated in defendants' motion to dismiss the original complaint. See ECF Docket No. 14. Despite being on notice of these deficiencies, plaintiff failed to cure them. Instead, plaintiff doubles down on his flawed claims by adding a "selective enforcement" claim that relies on equally dubious theories and by discussing disciplinary actions taken against other Council Members that are not even remotely comparable to the circumstances of the actions he challenges in this case. See Moultrie v. New York State Dep't of Corr., 2015 U.S. Dist. LEXIS 60080, at *6-7 (S.D.N.Y. 2015); Jenkins v. St. Luke's-Roosevelt Hosp. Ctr., 2009 U.S. Dist. LEXIS 105866, at *28 (S.D.N.Y. 2009) ("Plaintiff's claim based upon disparate disciplinary treatment fails because

Plaintiff does not allege that Calderon's conduct was of 'comparable seriousness' to the conduct for which Plaintiff was terminated.") (citations omitted).

Plaintiff cites to the discipline of Council Member Barry Grodenchik whom, plaintiff claims, was "favored" by the LGBTQ caucus. Even accepting plaintiff's factual assertions regarding Grodenchik as true, he was treated *identically* to plaintiff following each person's first offense. Compare Eichenholtz Decl., Exhibit A ¶ 55 (King's first offense resolved with training class) with ¶ 117 (Grodenchik's first offense resolved with training class). Notably, plaintiff only was fined and suspended after subsequent additional instances of misconduct, including additional substantiated instances of harassing behavior and a failure to cooperate, *none* of which happened in Grodenchik's case.

Similarly, plaintiff alleges that Council Member Gibson paid a $5,000 fine after admitting to misconduct "by using her position as a City Council Member to arrange to have dismissed a violation issued against her for driving while using her cellular phone." See Eichenholtz Decl., Exhibit A ¶ 121. Yet Gibson is not comparable to plaintiff for multiple material reasons: (1) this was her first offense, (2) she had one, rather than multiple, charges of misconduct and (3) she cooperated with the Council and admitted her misconduct; and (4) she timely paid her fine.

At bottom, despite filling the amended complaint with empty rhetoric and immaterial facts, plaintiff's equal protection race discrimination claims remain, as in his original complaint, conclusory and unsupported, and therefore insufficiently plead. See, e.g., Iscenko v. City of New York, 2017 U.S. Dist. LEXIS 103869, at *10 (S.D.N.Y. 2017) (granting motion to dismiss § 1983 claim where "the Complaint [does not] allege facts – as opposed to conclusory statements and surmise – that Plaintiff's investigation and termination were motivated by his

being white."); <u>Morales v. New York</u>, 22 F. Supp. 3d 256, 275 (S.D.N.Y. 2014) ("Plaintiff's conclusory allegations of disparate treatment and his personal opinion that such treatment was motivated by discriminatory intent are not enough to prevail on a § 1983 claim for a violation of the Equal Protection Clause.") (collecting cases); <u>Gertskis v. United States EEOC</u>, 2013 U.S. Dist. LEXIS 39110, at *27 (S.D.N.Y. 2013) (granting motion to dismiss § 1983 claims where "Plaintiff's claims are conclusory and devoid of factual content creating a plausible inference of any discriminatory conduct.").

POINT IV

**PLAINTIFF'S CONSPIRACY CLAIMS MUST BE DISMISSED BASED ON THE INTRA-CORPORATE CONSPIRACY DOCTRINE**

The amended complaint contains a claim that the defendants herein conspired to deprive plaintiff of his constitutional rights. In addition to the fact that plaintiff's rights were not violated for the reasons above, plaintiff's conspiracy claim also fails because defendants are all part of the City of New York government. A corporation or public entity "generally cannot conspire with its employees or agents as all are considered a single entity." <u>Richards v. City of N.Y.</u>, 2007 U.S. Dist. LEXIS 23726, at *16 (E.D.N.Y. 2007).

POINT V

**PLAINTIFF'S STATE LAW CLAIMS ARE WITHOUT MERIT**

Plaintiff asserts a myriad of state law claims, all of which suffer from multiple flaws, detailed below.

**A.    New York State Constitutional Claims**

Plaintiff's state constitutional claims, aside from being deficient for the same reason as his federal constitutional claims, also fail because of his failure to properly file a notice

of claim ("NOC").  While he filed a notice of claim concerning the first investigation against him in 2019, he withdrew that notice of claim rather than be questioned under oath about his claims. See Exhibits F and G.  Plaintiff did not file any other notices of claim.

Proper compliance with notice of claim requirements is necessary to sue for state constitutional violations.  See 423 South Salina Street, Inc. v. City of Syracuse, 68 N.Y.2d 474, 489 n.5 (1986), cert. denied, 481 U.S. 1008 (1987).  A plaintiff must plead and prove that she has filed a timely notice of claim, or risk dismissal of the claim. Eubanks v. N.Y.C. Dep't of Educ., 2021 U.S. Dist. LEXIS 21771, at *25 (S.D.N.Y. Feb. 3, 2021).  "Notice of claim requirements are construed strictly by New York state courts.  Failure to comply with these requirements ordinarily requires a dismissal for failure to state a cause of action.  In sum, under New York law, if [General Municipal Law ("GML")] §50-e has not been satisfied (and the defendant has not waived its right to a notice of claim), no damages are available."  Hardy v. New York City Health and Hosps. Corp., 164 F.3d 789, 793-794 (2d Cir. 1999) (internal quotations and citations omitted).  Under the GML, where a NOC is filed, the municipality has a right to demand an examination upon oral questions of the claimant ("50-h hearing").  See GML § 50-h(1)-(2).  Further, "[w]here a demand for examination has been served … no action shall be commenced against the [municipality] … unless the claimant has duly complied with such demand for examination…."  GML § 50-h(5).  Compliance with GML § 50-h – like the filing of a NOC – is a "precondition to commencing action" against a municipal defendant. See, e.g., Ward v. NYC Health & Hosps. Corp., 82 A.D.3d 471 (1st Dep't 2011).  As noted above, plaintiff affirmatively *withdrew* his notice of claim to avoid compliance with GML 50-h and therefore his state law constitutional claims must be dismissed.

**B.      New York City Human Rights Law Claims**

Plaintiff's cynical invocation of the CHRL – seeking the protection of the very law he ran roughshod over with his discriminatory and retaliatory misconduct at the Council – is also without merit.   Plaintiff's discrimination claims under the CHRL fail because, under the circumstances discussed more fully above, he has not sufficiently plead, and cannot establish, that he was treated less well because of his race or religion.   Whitfield-Ortiz v. Dep't of Ed., 116 A.D.3d 580, 581 (1st Dep't 2014); Appleton v. City of N.Y., 2019 NY Slip Op 30627[U], *14 (Sup. Ct. N.Y. Cty. 2019).

**C.      CPLR Article 78 Claims**

Courts within this circuit have consistently declined to exercise supplemental jurisdiction over Article 78 claims, which must be brought in New York State Supreme Court, a fact that plaintiff appears to concede.   De Jesus v. City of New York, 2012 U.S. Dist. LEXIS 23090, at *11-13 (S.D.N.Y. 2012) (collecting cases); see e.g., Brevot v. New York City Dep't of Educ., 2007 U.S. Dist. LEXIS 16109, at *31 (S.D.N.Y. 2007).   Moreover, plaintiff's Article 78 claims are barred by *res judicata* and/or *collateral estoppel* to the extent he seeks to re-litigate claims already addressed in prior Article 78 proceedings, including the lack of justiciability of such a claim.   See Footnote 12, supra.

## POINT VI

## THE COUNCIL MEMBER DEFENDANTS
## ARE ENTITLED TO QUALIFIED IMMUNITY

The amended complaint names several Council Members, all of whom appear to be sued in their official capacity only, and therefore they are synonymous with the Council itself. See Exhibit A ¶¶ 8-14. However, if plaintiff were to claim he was suing his former colleagues individually, there would be no basis for individual liability and, in any event, they would be entitled to qualified immunity. As detailed above, the constitutional claims plaintiff espouses are very narrow and the facts upon which he is supporting his theories are − charitably − a stretch. Even if some of the claims are viable, which they are decidedly not, qualified immunity would be appropriate. See e.g. Lewis, 165 F.3d at 166-67 ("relevant inquiry is not whether the defendants should have known that there was a federal right, in the abstract, to 'freedom of speech,' but whether the defendants should have known that the specific actions complained of violated the plaintiff's freedom of speech"), cert. denied, 528 U.S. 823 (1999); Giacalone v. Abrams, 850 F.2d 79, 85 (2d Cir. 1988) (saying "a public employee retains First Amendment rights" is . . . "too general to be controlling in the qualified immunity inquiry").

Given the complex nuances of the parties' policymaking roles, including the delicate balance between their rights as legislators and the question of the degree to whether the judicial branch is the right forum to adjudicate these issues, qualified immunity is plainly appropriate. "The question is not what a lawyer would learn or intuit from researching case law, but what a reasonable person in the defendant's position should know about the constitutionality of the conduct." Sulehria v. City of N.Y., 670 F. Supp. 2d 288, 322 (S.D.N.Y. 2009), quoting Anderson v. Recore, 317 F.3d 194, 197 (2d Cir. 2003). Moreover, given that the Council followed proper protocols, the findings against plaintiff were supported by evidence after a full

investigation and hearing, it was objectively reasonable for the defendants herein to rely on those findings and believe they were acting lawfully and in accord with the evidence adduced through the appropriate processes. Thus, all claims against the Council Members must be dismissed.

## **CONCLUSION**

For the foregoing reasons, defendants respectfully request that the Court grant their motion to dismiss the amended complaint, that the amended complaint be dismissed in its entirety and that defendants be granted costs, fees, and disbursements together with such other and further relief as this Court deems just and proper.

Dated:        New York, New York
             May 24, 2021

                                **JAMES E. JOHNSON**
                                Corporation Counsel of the
                                  City of New York
                                Attorney for Defendants
                                100 Church Street, Room 2-100
                                New York, New York 10007-2601
                                (212) 356-2430
                                eeichenh@law.nyc.com

By:    _____
                                  Eric Eichenholtz
                               Assistant Corporation Counsel